UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JEFFREY BURNETT, | ) | CASE NO. 1:06 CV 2621 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| JULIUS WILSON, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On October 30, 2006, pro se plaintiff Jeffrey Burnett filed the above-captioned action under 42 U.S.C. § 1983, and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132, against Richland Correctional Institution ("RCI") Warden Julius Wilson, Bureau of Classification Chief William Eleby, RCI Institutional Inspector Kelly Rose, RCI Unit Manager Deborah Wiper, RCI Case Manager Ms. Swogger, RCI Sergeant Stewart, RCI Deputy Warden of Special Services Dennis Baker, RCI Health Care Administrator Brian Cain, RCI Physician Kenneth Williams, RCI Health and Safety Officer James Houser, RCI Unit Manager Carla Bernard, and Maintenance Officer John Doe.  In the complaint, plaintiff alleges that RCI officials did not properly accommodate his disability.  He seeks monetary damages, and accommodations for his

disability.

Mr. Burnett filed a substantially similar action in this court on December 20, 2005. That case, No. 1:05 CV 2929, was assigned the United States District Judge Kathleen M. O'Malley. It was dismissed on March 9, 2006 for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e.

*Background*

Mr. Burnett states that he is legally blind. He does not indicate how long he has had this impairment, but states that he was blind when he entered RCI on August 23, 2005. Upon his arrival at RCI, he was placed in an infirmary cell, where he was housed for 35 days. He indicates that inmates housed in the infirmary are under 23 hour per day lock down. He contends he was placed in this cell solely because a cell was not available in the general population that was deemed adequate for his safety and medical needs. He indicates he was not permitted to make telephone calls and was told his visits with family would have to take place behind glass due to his maximum security classification status. He alleges that he was repeatedly refused an inmate assistant, but does not indicate what functions he needed the assistant to perform.

Mr. Burnett contends that on September 11, 2005, he was attempting to make his way through the shower area and grabbed onto the hand railing safety bar to help with navigation. He states that bar broke away from the wall causing him to lose his balance and fall to the floor.[1]

---

[1] Mr. Burnett's version of the facts in this complaint differs from that which he conveyed in his pleading in Burnett v. Cain, Case No. 1:05 CV 2929 (N.D. Ohio filed December 20, 2005.) In his previous complaint, Mr. Burnett stated that became dizzy while taking a shower and lost his balance. He claimed he seized the shower bar to break his fall but it snapped off from the wall and he fell backward against the floor. He also stated that after his fall, the shower bar was
(continued...)

He indicates he suffered physical injury from the fall.

Mr. Burnett claims that following treatment for his injuries, he was returned to the cell in the infirmary, despite his objections. He indicates that he requested a transfer to another institution but his request was denied by Bureau of Classification Chief William Eleby. Mr. Burnett claims that he sought help from another inmate and a few days later was released from the infirmary and placed in "Housing Unit H2 Lower A/B."[2] (Compl. at 5-6)

Mr. Burnett contends that when he was released from the infirmary, he was denied accommodations for his disability. He indicates that he was initially assigned to a lower bunk in a general population housing unit. He claims that on several occasions he hit his head on the top bunk while trying to get into or out of bed. He was then transferred to the merit unit where the beds are more suitable for Mr. Burnett's impairment. He contends that he was not given braille reading materials or training in how to read braille. He states that the failure to provide braille instruction denied him freedom of religion because he could not read the Bible. He also contends he was denied a trained instructor to demonstrate the proper use of the "blind cane." (Compl. at 9.) Mr. Burnett states he was placed on medical idle status and waited ten months to be assigned to prison employment. He complains that the "geological and structural deficiencies" of RCI pose a risk of harm to him. He states that the sidewalks are elevated above the ground and 90% of the facility

---

[1](...continued)
repaired and the prison inspected all of the bars each week to determine that they were in good condition.

[2]  This statement also contradicts allegations made in Case No. 1:05 CV 2929 in which he indicated that improvements in his situation were made when he wrote to the Ohio Department of Rehabilitation and Correction Chief Inspector Cheryl Martinez and she ordered his placement with the general prison population. Burnett v. Cain, Case No. 1:05 CV 2929 (N.D. Ohio filed Dec. 20, 2005)(Compl. at 4.)

"suffers from dangerous erosion damage and is therefore simply impassable or unusable to the plaintiff even if he were being accompanied by a trained escort." (Compl. at 11.) He also states that other inmates have forced him from the weight room for fear of his health and safety. He claims the defendants were deliberately indifferent to his serious medical needs and denied him equal access to programs and services in violation of the ADA. He seeks $ 250,000.00 in "nominal or general damages" from each defendant, $ 300,000.00 in compensatory damages from each defendant, and $ 325,000.00 in punitive damages from each defendant. (Compl. at 19.) He also requests an order from this court requiring RCI to install sliding doors and institution-wide hand railings, level the beach areas and all inclined areas, hire and train personnel capable of teaching or training blind inmates.

*Analysis*

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996).

---

[3] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

### A. Eighth Amendment

Mr. Burnett contends that the defendants subjected him to cruel and unusual punishment and were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The Supreme Court in Wilson v. Seiter, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. Id.. Seriousness is measured in response to "contemporary standards of decency." Hudson v. McMilian, 503 U.S. 1,8 (1992). Routine discomforts of prison life do not suffice. Id. Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. Id. at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. Id. An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official be aware of the substantial risk of serious harm and act with conscious disregard of that risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. Id. at 834.

**Confinement in the Infirmary**

Mr. Burnett asserts that his placement in the infirmary under 23 hour per day lock down for 35 days amounted to cruel and unusual punishment. Because placement in segregation is a routine discomfort of prison life, that action alone is insufficient to support an Eighth

Amendment claim.  Murray v. Unknown Evert, No. 03-1411, 84 Fed. Appx. 553 at *2 (6th Cir. Dec. 8, 2003)(*citing* Hudson v. McMilian, 503 U.S. 1,9 (1992)).  Mr. Burnett does not allege any facts which would suggest that his confinement in the infirmary cell was more severe than the typical conditions of segregation.  The mere fact that he was housed in the infirmary cell under maximum security conditions therefore does not state an Eighth Amendment claim.

**Broken Shower Rail**

Mr. Burnett next contends that the hand rail in the shower was not properly maintained causing him to suffer injury from a fall.  To justify a finding of liability under the Eighth Amendment, Mr. Burnett must demonstrate that the defendants acted with a sufficiently culpable mental state on par with "criminal recklessness."  Mere negligence will not suffice.  Id. at 835-36. Even liberally construed, the complaint contains no allegation reasonably suggesting that any of the defendants acted with a degree of culpability greater than negligence with regard to the broken hand rail.

**Denial of Transfer to Another Prison**

Mr. Burnett asserts that Mr. Eleby violated the Eighth Amendment when he refused to transfer Mr. Burnett to another institution.  A prisoner has no constitutional right to be incarcerated in a particular prison or to be held under a specific security classification.  Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Cash v. Reno, No. 97-5220, 1997 WL 809982 (6th Cir. Dec. 23, 1997). Mr. Eleby's alleged denial of Mr. Burnett's request to transfer to another institution does not violate the Eighth Amendment.

**Placement in Housing Unit H2 Lower A/B**

Upon his release from the infirmary, Mr. Burnett was placed in a general population

6

non-smoking housing unit of the prison. He indicates that he was moved to the merit dorm shortly thereafter because he kept hitting his head on the top bunk. He suggests that his placement in the H2 Lower Housing unit violated the Eighth Amendment.

As an initial matter, Mr. Burnett does not allege that any of the defendants was personally responsible for this placement in this unit. A defendant cannot be held liable under §1983 absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. Rizzo, 423 U.S. at 371. Furthermore, even if such an allegations could be liberally interpreted from the pleading, this allegation does not suggest that a sufficient serious deprivation has occurred or that any of the defendants acted with a sufficiently culpable mental state to satisfy the subjective component of an Eighth Amendment claim. When the problem became known, Mr. Burnett was moved to the merit dorm.

**Denial of Prison Employment**

Mr. Burnett contends that he was denied prison employment for ten months in violation of the Eighth Amendment. He indicates that Health Care Administrator Brian Cain and Dr. Kenneth Williams placed him on medical idle status which precluded him from being assigned to prison employment until the restriction was lifted. There is, however, no constitutional right to prison employment or a particular prison job. Newsom v. Norris, 888 F.2d 371, 374 (6th Cir. 1989); see McKinley v. Bowlen, No. 00-6344, 2001 WL 493394 at *2 (6th Cir. May 1, 2001). Moreover, the placement of a medical idle restriction on Mr. Burnett does not rise to the level of deliberate indifference to serious medical needs. See McKinley, No. 00-6344, 2001 WL 493394 at *2. Although it is apparent that Mr. Burnett believes the restriction was unnecessary, his claim merely reflects a difference of opinion with the medical plan devised for him. Where a prisoner has

received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments. Westlake v. Lucas, 537 F.2d 857, 860 n. 5. (6th Cir. 1976). This axiom is particularly true in this case where the claim is not one of conscious disregard of a substantial risk of serious harm to Mr. Burnett, but instead is one of being overly cautious to protect his health. Mr. Burnett has failed to set forth facts to show that this decision violated the Eighth Amendment.

**Recreation**

The claim concerning denial of recreation has two prongs. First, Mr. Burnett contends that the recreation yard contains "geological and structural deficiencies" which make it difficult for him to utilize the recreation yard. He does not elaborate on this statement except to say that the facility is built on a hill and that erosion has taken place. He also claims the sidewalks are elevated. Second, Mr. Burnett contends he has been banned from the weight room by other inmates who have told him they were concerned for his safety.

Once again, Mr. Burnett does not connect either of these allegations to a particular defendant named in the complaint. He indicates generally that Ms. Wiper, Ms. Swogger, and Sgt. Stewart all responded to his Informal Complaint Resolution grievances regarding the need for accommodations for his disability by stating that his complaints were "outside the scope of their official duties." (Compl. at 11.) Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. Shehee v. Luttrell, 199 F.3d. 295, 300 (6th Cir. 1999). Mr. Burnett failed to allege facts to reasonably indicate these defendants engaged in other activities which would indicate they were deliberately indifferent to his serious medical needs. Similarly, there is no suggestion that any of the defendants prevented

him from availing himself of the weight room.  He alleges that he is being barred by other inmates. There is no suggestion that he sought assistance from any of the defendants and was denied intervention.

Mr. Burnett further indicates that Health and Safety Officer James Houser responded to an Informal Complaint Resolution concerning the condition of the prison by stating:

> After meeting with Inmate Burnett on 5/8/06, it is my understanding that his main problem is that the handrail in IHS is fixed and that the erosion problems that restrict his movement around the compound is also being addressed. Mr. Nichols and myself assured Inmate Burnett that the handrails were repaired in IHS as soon as maintenance was aware of the problem.  As far as the 'severe erosion' problems in the institution, temporary repairs have been made and Central Office is presently working with an outside contractor to make permanent repairs to the grounds to resolve this problem.

(Compl. at 12.)  To satisfy the subjective component of an Eighth Amendment claim, the plaintiff must set forth facts to indicate that the official acted with a "criminal recklessness" or conscious disregard of a substantial risk of serious harm.  Farmer, 511 U.S. at 837.  Nothing in Mr. Burnett's pleading reasonably suggests that Mr. Houser was deliberately indifferent to his medical needs.

**Reading Materials and Training**

Mr. Burnett asserts that the defendants have not provided him with braille reading materials, instruction on how to read braille, or training in the use of a cane.  An Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness.  It does not afford protection against conditions of confinement which cause mere discomfort or inconvenience. Hudson, 503 U.S. at 9-10 (requiring extreme or grave deprivation).  Mr. Burnett was blind when he entered RCI, and did not know how

to read braille prior to his incarceration.  While educational material or vocational training may be desirable and enhance the prospects for rehabilitation, the deprivation of such opportunities does not inflict "unnecessary and wanton pain" within the meaning of the Eighth Amendment.  Rhodes, 452 U.S. at 347-48; Marcum v. Jones, No. 1:06CV108, 2006 WL 543714 (S.D. Ohio Mar. 3, 2006).

Mr. Burnett also indicates he was denied training on the use of a cane.  This also does not rise to the level of an Eighth Amendment violation.  He was provided with an inmate escort to assist him.  Mr. Burnett does not contend that he is unable to get around the institution, with the exception of his alleged inability to navigate the recreation yard, which he contends he would be unable to do under any circumstances due to its geological deficiencies.  He may prefer to have a cane instead of an inmate escort; however, the failure to provide him with his choice of accommodations, particularly one to which he previously has not become accustomed, does not constitute an extreme deprivation sufficient to invoke the protections of the Eighth Amendment.

### B. First Amendment

In addition, Mr. Burnett contends that the institution's failure to provide him with a braille Bible and training to read braille denies him freedom of religion.  In order to establish a violation of the Free Exercise Clause of the First Amendment, plaintiff must show that the prison policy or practice prevents him from engaging in conduct or having a religious experience which is mandated by the organized religious group to which he belongs.  Abdullah v. Fard, 974 F. Supp. 112, 117 (N.D. Ohio 1997); see also, Madison v. Horn, No. CIV.A. 97-3143, 1998 WL 531830 at *8 (E.D. Pa. Aug. 21, 1998).  The policy's interference with the religious experience must be more than an inconvenience to the prisoner; it must substantially burden the ritual or observance in question.  Abdullah, 974 F. Supp. at 117.  Furthermore, the religious experience or tenet must be

10

a central or indispensable ritual or observance of the established faith, and not simply a personal preference of the plaintiff. Id.

The complaint contains no information regarding the organized religious group to which Mr. Burnett belongs or the manner in which the failure to provide him with braille training and a braille Bible impinges on a central tenet of his religion. Once again the court observes that Mr. Burnett could not read a braille Bible prior to entering the institution. He does not state that he requested and was denied an accommodation for religious instruction in light of his disability.[4] There are no allegations in the pleading which reasonably suggest that any of the named defendants is prohibiting him from practicing his religion.

### C. Americans With Disabilities Act

Finally, Mr. Burnett asserts that the defendants failed to make reasonable accommodations for his disability in violation of the ADA. Under the ADA, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Claims under Title II of the ADA, however, may not be brought against a person in his or her individual capacity. Title II protects certain disabled individuals against discrimination by a "public entity." 42 U.S.C. § 12132. A "public entity" is defined by statute as "any State or local government." 42 U.S.C. § 12131(1)(A). There is no personal liability under Title II of the ADA. Crumbaker v. McLean County Kentucky, No.

---

[4] The Institutional Inspector indicated to Mr. Burnett that the "Richland Correctional Staff also made progress in obtaining a recording device for you to listen to and send mailings and correspondence." (Disposition of Grievance dated June 6, 2006)

02-5110, 2002 WL 1359364 at *2 (6th Cir. June 20, 2002)(citing Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000)); Moore v. Chavez, Nos. 01-1553, 01-2308, 2002 WL 467939 at *2 (6th Cir. Mar. 26, 2002).  Mr. Burnett's claims under the ADA against the defendants in their individual capacities require dismissal.

Claims brought against a state or municipal officer in his or her official capacity are the equivalent of claims brought against the public entity for which he or she is employed. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989). Consequently, Mr.Burnett's official-capacity ADA claims against Warden Julius Wilson, Bureau of Classification Chief William Eleby, Institutional Inspector Kelly Rose, Unit Manager Deborah Wiper, Case Manager Ms. Swogger, Sergeant Stewart, Deputy Warden of Special Services Dennis Baker, Health Care Administrator Brian Cain, Physician Kenneth Williams, Health and Safety Officer James Houser, Unit Manager Carla Bernard, and Maintenance Officer John Doe are redundant, because the defendants are all employees of the State of Ohio Department of Rehabilitation and Correction. Id.; Von Herbert v. City of St. Clair Shores, No. 02-1063, 2003 WL 1194304, *6 (6th Cir. March 11, 2003).  Because Julius Wilson is the Warden of the Richland Correctional Institution, all of Mr. Burnett's ADA claims will proceed against him solely in his official capacity.

### *Conclusion*

Accordingly, Mr. Burnett's claims under 42 U.S.C. § 1983,  and his claims under the Americans with Disabilities Act against all of the defendants in their individual capacities are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e).  His claims under the Americans with Disabilities Act against William Eleby, Kelly Rose, Deborah Wiper, Ms. Swogger, Sergeant Stewart, Dennis Baker, Brian Cain, Kenneth Williams, James Houser, Carla Bernard, and

Maintenance Officer John Doe in their official capacities are also dismissed pursuant to 28 U.S.C. § 1915(e). This case shall proceed solely on plaintiff's claims under the Americans with Disabilities Act against Julius Wilson in his official capacity. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[5]

    IT IS SO ORDERED.

                              /s/Dan Aaron Polster 2/7/07
                              DAN AARON POLSTER
                              UNITED STATES DISTRICT JUDGE

---

[5] 28 U.S.C. § 1915(a)(3) provides:

    An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.